ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| INNOVATIVE EMERGENCY MANAGEMENT, INC.<br><br>Recurrente<br><br>V.<br><br>DEPARTAMENTO DE HACIENDA DE PR; JUNTA DE SUBASTAS DEL DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO<br><br>Recurrida | KLRA202400177 | *REVISIÓN ADMINISTRATIVA* procedente de la Junta de Subastas del Departamento de la Vivienda de Puerto Rico<br><br>Caso Núm.: CDBG-DRMIT-RFP-2023-02 GEO Rad System Planning Vendor services<br><br>Sobre: IMPUGNACION DE SUBASTA |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Alvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de abril de 2024.

Comparece ante nos INNOVATIVE EMERGENCY MANAGEMENT, INC. (IEM o Recurrente) mediante el recurso de revisión administrativa de epígrafe presentado el 5 de abril de 2024 y solicita la revocación de un Aviso de Adjudicación del Departamento de la Vivienda de Puerto Rico (Departamento o Vivienda) en la cual se le otorgó la buena pro de una Solicitud de Propuesta (RFP, por sus siglas en inglés) a ICF International, LLC (ICF). Argumenta la Recurrente que la adjudicación a ICF debió ser revocada debido a graves conflictos de interés, y, en consecuencia, ser adjudicada a favor de la propia Recurrente.

Por lo fundamentos que expondremos a continuación, *confirmamos* la determinación del Departamento de Vivienda.

**I.**

El 10 de abril de 2023 el Departamento de Vivienda emitió una solicitud de propuesta identificada como CDBG-DRMIT-RFP-2023-02 / GEO/RAD System Planning Vendor Services. El propósito de esta es emplear los fondos federales asignados para mitigar los riesgos provocados por desastres naturales y lograr reducir perdidas futuras. En específico, solicita la contratación de un proveedor de servicios que implemente: (1) el desarrollo del Plan Estratégico de Infraestructura de Datos Espaciales de Puerto Rico; (2) el establecimiento de un sistema de base de datos estándar y centralizado; (3) y el desarrollo de un catastro conocido como un "Digital Twin City System" para los 78 municipios de la isla.

Para el 23 de junio de 2023, Vivienda había recibido cinco (5) propuestas a su RFP, las cuales fueron evaluadas por el Comité Evaluador (Comité) designado mediante Orden Administrativa No. 23-37 el 26 de junio de 2023. Luego de que el Comité recomendara el comienzo de la etapa de diálogo con los proponentes, el 5 de octubre de 2023, el Departamento, por conducto de la División de Adquisiciones, solicitó unas aclaraciones a ICF, dentro de las cuales se encontraban preguntas sobre los costos de un sistema de base de datos perteneciente a Trackit, LLC (Trackit), una firma especializada en asesoramiento geoespacial. En una misiva responsiva, ICF aclaró a Vivienda que los servicios de dicha compañía eran gratuitos.

Posterior a ello, el 13 de marzo de 2024 la Junta de Subastas emitió un comunicado en el cual indicó que el 10 de abril de 2023 había establecido un costo estimado independiente (ICE, por sus siglas en inglés) para el proyecto de $77,948,564.72. Luego, el Departamento de Vivienda emitió un Aviso de Adjudicación el 18 de marzo de 2024, en la cual adjudicó la buena pro a ICF. Notificó el

Departamento que recibió cinco (5) propuestas de las siguientes compañías: Wovenware, Tetra Tech Inc., ICF, IEM y KPMG. Sin embargo, el Comité determinó que solo Tetra Tech, ICF y IEM cumplieron con los requisitos establecidos en el RFP.

Surge del Aviso de Adjudicación que la única categoría donde diferían IEM y ICF era en el renglón de "Quality of the Proposed Approach", donde ICF obtuvo una marca de "Excellent", mientras que IEM recibió una calificación de "Good". La otra diferencia fue en el renglón de "Preference" donde se evaluó la certificación correspondiente a la "Section 3 and/or M/WBE" del RFP.[1] En esta categoría, solo IEM recibió una calificación de "pass".

Luego de varias solicitudes de revisiones de propuestas de costos, las últimas ofertas (BAFO, por sus siglas en inglés) indicaron que ICF y la Recurrente ambas sometieron ofertas de costos por debajo del ICE. Las propuestas revisadas para el 14 de febrero de 2024 eran: $98,931,177.77 sometida por ICF, mientras que la propuesta de IEM era de $105,839,602.00. Luego, las versiones finales fueron sometidas el 21 de febrero de 2024 correspondiente a la sección 10.2 (h)(7) de RFP. Finalmente, ICF presentó una propuesta de costo de $69,881,697.63, mientras que la propuesta de IEM fue de $70,597,326.00.

Por otra parte, el 19 de marzo de 2024, IEM requirió al Departamento de Vivienda acceso al expediente administrativo. Alega la Recurrente que los documentos entregados el 21 de marzo de 2024 por el Departamento estaban sumamente editados, imposibilitando su revisión. Consecuentemente, el 25 de marzo de 2024 la Recurrente nuevamente solicitó el expediente, esta vez sin tachadura alguna. A esta petición respondió el Departamento citando la sec. 10.14 sobre confidencialidad de la Solicitud de

---

[1] M/WBE Policy es un acrónimo para la certificación de "Minority and Women-Owned Business Enterprise Policy",

Propuesta. Inconforme con la respuesta del Departamento de Vivienda, el 27 de marzo de 2024, la Recurrente envió una tercera comunicación al Departamento solicitando el expediente sin editar, junto con todo documento sometido por los proponentes para sus presentaciones orales. El mismo día, Vivienda compartió únicamente los documentos pertinentes a las presentaciones.

En un proceso independiente a la solicitud de propuesta ya discutida, el Departamento de Vivienda suscribió un contrato con Atkins Caribe, LLP (Atkins) el 13 de julio de 2023, en el cual figuraba como subcontratista Trackit. Surge del contrato que dentro de las funciones de Trackit se encuentra proporcionar asesoramiento geoespacial, planificación y desarrollo ambiental y consultaría financiera.

Inconforme con las determinaciones del Departamento de Vivienda, recurre ante nos la Recurrente y levanta los siguientes señalamientos de error:

**ERRO EL COMITÉ EVALUADOR Y LA JUNTA DE SUBASTAS AL NO DESCALIFICAR A ICF INTERNATIONAL LLC POR TENER UN CONFLICTO DE INTERÉS AL HABER INCORPORADO EN SU PROPUESTA LA TECNOLOGÍA DE TRACKIT COMO PARTE DE SU "WORK APPROACH"**

**ERRO EL COMITÉ EVALUADOR Y LA JUNTA DE SUBASTAS AL NO DARLE PESO ALGUNO NI PREFERENCIA A IEM POR CONTAR CON LA CERTIFICACIÓN DE "SECTION 3 BUSINESS CONCERN AND MBE/WMBE"**

**ERRO EL DEPARTAMENTO DE LA VIVIENDA AL NO DAR ACCESO TOTAL AL EXPEDIENTE ADMINISTRATIVO**

Posterior a la presentación del recurso, la Recurrente presentó una *Moción en Auxilio de Jurisdicción* el 5 de abril de 2024 en la cual solicitó la paralización del trámite administrativo relativo al Aviso de Adjudicación emitido por la Junta. En respuesta, esta Curia emitió una *Resolución* el 8 de abril de 2024 donde declaramos *No Ha Lugar* la referida petición y otorgamos un término de diez (10) días a partir

de la notificación de la *Resolución* para que la parte Recurrida presentara su alegato en oposición. Oportunamente, ICF y el Departamento de Vivienda presentaron sus respectivas oposiciones al recurso de revisión administrativa el 19 de abril de 2024.

Con el beneficio de los alegatos en oposición, procedemos a exponer el marco jurídico.

## II.

### A. Revisión Judicial

Reiteradamente, nuestra última instancia apelativa ha resuelto que las determinaciones emitidas por las agencias administrativas están sujetas a un proceso de revisión judicial ante este Tribunal de Apelaciones. *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *AAA v. UIA*, 200 DPR 903, 910 (2018); Art. 4.006(c) de la Ley Núm. 201-2003 Ley de la Judicatura, 4 LPRA sec. 24y. Al respecto, la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), autoriza expresamente la revisión de las decisiones, órdenes y resoluciones finales de estos organismos. Sec. 4.6 de la LPAU, 3 LPRA sec. 9676.

Es decir, nuestra función como foro apelativo está limitada por la Ley Núm. 201-2003 conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico que dispone en el Art. 4.006 (c), 24 LPRA sec. 24y, que este Tribunal de Apelaciones tendrá competencia, "[m]ediante recurso de revisión judicial, que se acogerá como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas." Cónsono a ello, la Regla 56 de nuestro Reglamento, 4 LPRA Ap. XXII-B, establece lo siguiente:

> Esta parte gobernará el trámite de las revisiones de todos los recursos instados ante el Tribunal de Apelaciones para la revisión de las decisiones, reglamentos, órdenes,                resoluciones                y

providencias finales dictadas por organismos o agencias administrativas o por sus funcionarios(as), ya sea en su función adjudicativa o cuasi legislativa, conforme lo dispuesto en ley.

Para la interposición del recurso de revisión, la Sec. 4.1 de la LPAU, 3 LPRA sec. 9671, dispone que las normas relacionadas con la revisión judicial se extienden a todas las órdenes, resoluciones y providencias adjudicativas finales dictadas por las agencias o funcionarios administrativos, serán revisadas por este Tribunal de Apelaciones, a través del *Recurso de Revisión Judicial.* En particular, la Sec. 4.2 de LPAU, 3 LPRA sec. 9672, dispone como sigue:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.

El Tribunal Supremo de Puerto Rico también ha expresado que una *orden o resolución final,* es aquella que culmina el procedimiento administrativo, tiene efectos sustanciales sobre las partes y resuelve todas las controversias ante la agencia, les pone fin, sin dejar pendiente una para ser decidida en el futuro. Se ha intimado, además, que una orden o resolución final tiene las características de una sentencia en un procedimiento judicial porque resuelve finalmente la cuestión litigiosa y de la misma puede apelarse o solicitarse revisión. *Comisionado Seguros v. Universal,* 167 DPR 21 (2006). Además, para que dicha decisión tenga carácter de finalidad debe incluir determinaciones de hecho, conclusiones de derecho y una advertencia sobre el derecho a solicitar

reconsideración o revisión judicial. *Crespo Claudio v. O.E.G.,* 173 DPR 804, 813 (2008); Sec. 3.14 de la LPAU, 3 LPRA sec. 9654. Al incorporar tales requisitos, el legislador se aseguró que la intervención judicial se realizara después de que concluyeran los trámites administrativos y se adjudicaran todas las controversias pendientes ante la agencia, de manera que no haya una intromisión de los tribunales a destiempo. *Crespo Claudio v. O.E.G., supra,* pág. 813. Por tanto, una orden o resolución administrativa debe cumplir con dos requisitos para que ésta sea revisable judicialmente, a saber: (1) que la resolución que se pretenda revisar sea final y no interlocutoria y (2) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia. *Tosado v. AEE,* 165 DPR 377, 385 (2005).

### B. Deferencia a las Decisiones Administrativas

Reiteradamente, nuestro Tribunal Supremo ha establecido que, en el contexto de las subastas gubernamentales, la norma es que las agencias gozan de una amplia discreción en la evaluación de las propuestas sometidas ante su consideración. *Caribbean Communications v. Pol. de P.R.*, supra, pág. 1006, citando a *Accumail PR v. Junta de Subastas AAA,* 170 DPR 821 (2007). Esta norma de deferencia es necesaria pues, usualmente, las agencias poseen "una vasta experiencia y especialización que la colocan en mejor posición que el foro judicial para seleccionar el postor que más convenga al interés público." *Id*, citando a *Perfect Cleaning v. Cardiovascular II,* 172 DPR 139 (2007); *Accumail PR v. Junta de Subasta AAA*, supra.

Por ello, una vez sea adjudicada la *buena pro* los tribunales no habremos de sustituir el criterio de la agencia o junta concernida, excepto si se demuestra que la decisión se tomó de forma arbitraria o caprichosa, o mediando fraude o mala fe. *Torres Prods. v. Junta de Subastas Mun. Aguadilla,* 169 DPR 886 (2007); *Maranello v. OAT,*

186 DPR 780, 793 (2012) (Sentencia). Por tanto, "[e]n ausencia de estos elementos, ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. La cuestión debe decidirse a la luz del interés público." *Íd.* De este modo, sostendremos la determinación de la agencia si se cumple con el criterio de razonabilidad. *Íd.*

Al respecto, precisa recordar que los foros revisores debemos concederles gran deferencia y consideración a las decisiones de las agencias administrativas, dado a la vasta experiencia y conocimiento especializado sobre los asuntos que le fueron delegados. *Graciani Rodríguez v. Garage Isla Verde, LLC; Mercedes Benz USA, LLM; Mercedes Benz Financial Services US, LLC,* 202 DPR 117 (2019); *Mun. de San Juan v. Plaza Las Américas,* 169 DPR 310 (2006); *Hernández Álvarez v. Centro Unido,* 168 DPR 592 (2006). Conforme a ello, los tribunales habremos de ser cautelosos cuando intervengamos con las decisiones de los organismos administrativos. *Metropolitana, SE v. ARPe,* 138 DPR 200 (1995); *Viajes Gallardo v. Clavell,* 131 DPR 275 (1992).

Por las razones que anteceden, las decisiones de las agencias administrativas están revestidas de una presunción de regularidad y corrección. *García v. Cruz Auto Corp.,* 173 DPR 870 (2008); *Vélez v. ARPe.,* 167 DPR 684 (2006); *Rivera Concepción v. A.R.Pe.,* 152 DPR 116 (2000). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *E.L.A. v. P.M.C.,* 163 DPR 478 (2004); *Misión Ind. P.R. v. J.P.,* 146 DPR 64 (1998); *A.R.Pe. v. Junta de Apelaciones Sobre Construcciones y Lotificaciones,* 124 DPR 858 (1989). Por ello, al momento de revisar una decisión administrativa el criterio rector

para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc.,* 161 DPR 69 (2004).  Se debe determinar si la agencia actuó de forma arbitraria, ilegal, o de manera tan irrazonable que su actuación constituyó un abuso de discreción. *Asociación de Vecinos Tulip/Monteverde, Inc. v. Junta de Planificación,* 171 DPR 863 (2007); *Marina Costa Azul v. Comisión,* 170 DPR 847 (2007). Al hacer ese análisis, los tribunales habremos de considerar si el remedio concedido por la agencia fue apropiado; si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y si, mediante una revisión completa y absoluta, las conclusiones de derecho del ente administrativo fueron correctas. *Pagán Santiago et al. v. ASR,* 185 DPR 341, 358 (2012).

## C. Conflicto de Interés

La *Política de Conflictos de Interés y Estándares de Conducta, Departamento de Vivienda, 24 de marzo de 2023,*[2] define un conflicto de interés como una "[s]ituación en la que el interés personal o económico está o podría estar razonablemente en conflicto con el interés público." *Id.* en la pág. 6. La Política también discute lo que son conflictos en una contratación, y los define como los conflictos "que surgen o podrían surgir en la contratación o adquisición de suministros, equipo, construcción, así como servicios de ingeniería, arquitectura y otros servicios profesionales por parte de los recipientes, administrador de fondos y/o subrecipientes para los programas CDBG-DR/MIT de Vivienda." *Id.*

---

[2]https://recuperacion.pr.gov/download/politica-de-conflictos-de-interes-y-estandares-de
conducta/?wpdmdl=9176&refresh=6622ac8d9459c1713548429&ind=16799531
42055&filename=ADMINISTRATION%20-
%20POLICY%20%20%20COMPLIANCE%20(POLI)%20-
%20CONFLICT%20OF%20INTEREST%20AND%20STANDARDS%20OF%20CON
DUCT%20(ES)%20(V.4).pdf

El Código Federal de Regulaciones federal exige que los gobiernos locales mantengan normas que atiendan conflictos de interés organizacionales y que regulen el desempeño de empleados a cargo de adjudicación de contratos. 2 CFR § 200.319. Según la Política del Departamento de Vivienda, "un conflicto de interés organizacional existe cuando la naturaleza del trabajo en virtud de un contrato y los intereses organizacionales, financieros, contractuales o de otro tipo del contratista son tales que":

    i.     La adjudicación del contrato puede dar lugar a una ventaja competitiva desleal; o

    ii.    La objetividad del contratista en la ejecución de los trabajos bajo el contrato puede verse afectada. *Id.* en la pág. 24.

**D. "Minority and Women-Owned Business Enterprises"**

El Código Federal de Regulaciones les exige a entidades gubernamentales no federales que reciben fondos federales implementar oportunidades dirigidas a que compañías pequeñas cuyos propietarios sean mujeres o grupos minoritarios participen en contrataciones gubernamentales. 2 CFR sec. 200.321. Como respuesta, el Departamento de Vivienda de Puerto Rico adoptó esta encomienda mediante las Ordenes Ejecutivas Núm. 11625, 12138 y 12432 y estableció el "Minority and Women-Owned Business Enterprise Policy" o "M/WBE", Departamento de Vivienda, 29 de noviembre de 2022.[3] La Política incluye, entre otras cosas, los requisitos para adquirir la certificación de "M/WBE". También le requiere a las entidades, en la sección 8.1, que documenten los esfuerzos realizados para asegurar que estas compañías se enteren de las oportunidades de contratación, y de esa manera se incentive su participación. *Id.*

---

[3] https://recuperacion.pr.gov/wp-content/uploads/2020/05/ADM_POLI_Guidelines_MWBE_EN_v1-1.pdf.

**E. Acceso al Expediente**

La Ley Núm. 141-2019, supra, conocida como la Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información a la Información Pública, se creó a los fines de establecer una política pública de acceso a la información pública; ordenar, organizar y pautar mecanismos procesales sencillos, ágiles y económicos de acceso real a los documentos e información pública; consignar principios e instrumentos de garantía de acceso; ordenar la designación de Oficiales de Información en cada entidad gubernamental; y para otros fines relacionados. No obstante, nuestro Tribunal Supremo ha establecido que tal derecho no es absoluto, por lo cual debe ceder en casos de imperativo interés público. Exposición de Motivos de la Ley Núm. 141-2019, supra; López Vives v. Policía de Puerto Rico, 118 DPR 219 (1987).

A tono con lo anterior, nuestro máximo Foro ha reconocido supuestos en los que el Estado puede válidamente reclamar la confidencialidad de documentos o información, a saber: (1) cuando una ley así lo declara; (2) cuando la comunicación está protegida por alguno de los privilegios evidenciarios; (3) cuando revelar la información pueda lesionar derechos fundamentales de terceros; (4) cuando se trate de la identidad de un confidente, Regla 32 de Evidencia y; (5) cuando se trate de información oficial" conforme la Regla 514 de Evidencia. Santiago v. Bobb y El Mundo, Inc., 117 DPR 153 (1986).

En *Trans Ad de Puerto Rico v. Junta de Subastas de la Autoridad Metropolitana de Autobuses,* 174 DPR 56 (2008), el Tribunal Supremo de Puerto Rico dictaminó que "el expediente administrativo que contiene la documentación relacionada con el trámite de un procedimiento de subasta es, necesariamente, un documento público" *Id.* en la pág. 70. En esa ocasión, nuestro más alto foro resolvió que "una vez se ha adjudicado la buena pro de una

subasta, el expediente que contiene los documentos recopilados en el trámite de la misma está sujeto a la inspección de cualquier ciudadano en virtud del artículo 409 del Código de Enjuiciamiento Civil." *Id.* No obstante, hizo la siguiente aclaración: [n]o estamos pasando juicio —por no estar planteado— sobre la validez de un reclamo de confidencialidad respecto a algún documento del expediente de subasta, por éste contener información confidencial. *Id.* nota al calce núm. 5.

Por otra parte, la sección 10.14 del RFP titulada "Confidentiality of Responses and Proprietary Information" establece lo siguiente:

> Upon completion of the RFP process, the PRDOH will make public its report regarding the qualification, procurement, and selection process, which shall contain certain information related to this RFP process, except trade secrets, proprietary information, or privileged and confidential information of the Proposers, so identified by Proposers. Accordingly, all Proposers are suggested to submit a redacted copy of their Proposal at the time of submission. For the purpose of clarity, "redacted copy" refers to a copy of the Proposal that has been modified, edited, or revised and any confidential or sensitive information has been removed. The PRDOH reserves the right, without limitations, to make public the redacted copies of the Proposals at the conclusion of the RFP process. If a redacted copy is not submitted by a Proposer, the PRDOH will assume that the original copy of the Proposal can be made public. Proposals containing substantial contents marked as confidential or proprietary may be rejected by the PRDOH.

> The PRDOH cannot guarantee that confidentiality or proprietary claims made by a Proposer, in any way, will be honored. Due to the nature of this RFP, some confidentiality or proprietary claims cannot be assured. Provision of any information marked as confidential or proprietary shall not prevent the PROH from disclosing such information if required by law. The ultimately awarded Contracts) and all prices set forth therein shall not be considered confidential or proprietary and such information may be made publicly available.

> Any and all information, be it trade secrets, propietary or confidential information submitted as part of this RFP will be made available to HUD, the U.S. Office of Inspector General, or any other federal or state agency that requires said information for program evaluation and compliance purposes.

**III.**

En la discusión de su primer señalamiento de error, la Recurrente arguye que ICF se descalificó como proponente debido a un conflicto de interés al incluir tecnología y data propietaria de Trackit, y descansar en dicha tecnología como parte integral de su propuesta. Ello, porque al Trackit poseer un contrato de servicios con Vivienda para supervisar los servicios de GeoRAD, ICF obtuvo una calificación superior indebida. Añade que, ICF falló en incluir el conflicto en su certificación negativa de conflicto de interés, ya que tenía un deber de divulgar un conflicto, sea este real, aparente o percibido.

En respuesta, ICF argumenta que incluyó a Trackit en su propuesta como un ejemplo de una base de datos disponible, con el propósito de explicar con mayor claridad su propuesta, y no como un miembro de su equipo, ni subcontratista, y que, además, su enfoque técnico no está basado en herramienta alguna provista por Trackit. Añade que aun si Trackit fuese miembro o subcontratista de ICF, la propuesta se sometió veinte (20) días antes a la otorgación del contrato de Adkins con Vivienda en el cual Trackit es subcontratista, por lo que ICF desconocía del contrato, y se le imposibilitaba incluirlo en su certificación referente a conflictos de interés.

Por su parte, el Departamento de Vivienda expuso que Trackit no tuvo un rol decisorio en la adjudicación del contrato. Esto, porque el Departamento estaba consciente que la base de dato fue utilizada como un ejemplo ilustrativo. Asimismo, reveló Vivienda que ICF le aclaró al Comité que no contemplaba la adquisición de los servicios de Trackit. Esclareció Vivienda que, la mención de Trackit no comprometió la libre competencia del proceso de licitación pues al revisar la propuesta era evidente que la tecnología de Trackit no es la única en el mercado, ni esencial para la ejecución

del contrato, así que no existió una ventaja competitiva desleal que afectara la objetividad del Departamento como contratista.

Luego de un análisis del expediente, no podemos coincidir con IEM sobre la existencia de un conflicto de interés. ICF no nombró a Trackit como un subcontratista en su propuesta, e incluso, posteriormente aclaró que no estaría utilizando la base de datos. Corresponde otorgarle la deferencia que se merece el Departamento de Vivienda con relación a su declaración de que no hubo una ventaja competitiva desleal que afectara su juicio, pues conocía que el desempeño de ICF no dependía del uso de Trackit, y tenía presente la existencia de otras bases de datos disponibles en el mercado.

Adujo la Recurrente en la discusión de su segundo señalamiento de error que no se incluyó en el Aviso de Adjudicación cual peso o consideración le otorgó el Departamento de Vivienda a la calificación de "preferencia", por ser IEM un negocio certificado bajo "Section 3 and/or M/WBE". El Departamento de Vivienda respondió a este argumento indicando que cumplió con el propósito de la política federal al avaluar de forma justa y equitativa la solicitud de la Recurrente, pero que tener dicha certificación no significa la adjudicación automática de la buena pro. Añadió que, su determinación final fue basada en quien mejor cumplió con los requisitos establecidos en el RFP, y en específico, quien fue la oferta más económica, con el fin de velar por el interés público de asignar fondos públicos responsablemente. ICF hizo eco al argumento del Departamento, explicando que excedió a IEM en todos los renglones, incluyendo el precio, y que la certificación de "M/WBE" no es un factor crítico para la evaluación de la propuesta.

El RFP indica que los negocios certificados como "M/WBE" deberían recibir preferencia para asegurar la participación de minorías, mas no exige que se justifiquen los criterios de evaluación,

ni que dicha certificación tendría un peso mayor en la evaluación de los requisitos establecidos en el RFP. Por tanto, resolvemos que no erró el Departamento de Vivienda al no abundar en el peso que recibió dicha preferencia. Además, es claro que ICF cumplió con los requisitos establecidos en el RFP, y que sus calificaciones estuvieron por encima de las de la Recurrente, incluyendo ser el licitador con la oferta más baja.

En su tercer señalamiento de error, arguye la Recurrente , amparada en la norma establecida en *Trans Ad de Puerto Rico v. Junta de Subastas de la Autoridad Metropolitana de Autobuses, supra*, en la *Ley de Transparencia y Procedimiento Expedito para el Acceso a la Información Pública*, Ley Núm. 141 de 1 de agosto de 2019, según enmendada, y la sec. 10.14 del RFP, que un expediente relacionado a un proceso de subasta es un documento público al cual tiene acceso total, y que la denegatoria del acceso íntegro al expediente tiene un efecto detrimental en la fiscalización de la gestión gubernamental.

El Departamento de Vivienda aseguró haber cumplido con las directrices de propiciar información de acuerdo con las regulaciones establecidas, pues la sección 10.14 del RFP claramente establece que, en aras de proteger información confidencial como secretos de negocios, información propietaria o datos confidenciales, que los documentos entregados a los licitadores pueden tener tachaduras. Afirmó que la información suministrada logró el equilibrio de cumplir con el deber de ofrecer acceso al expediente, pero protegiendo la confidencialidad de los licitadores. ICF igualmente argumentó que aun siendo el expediente información pública, la Recurrente no tiene acceso irrestricto a este.

Nuestro Tribunal Supremo ha dictaminado que un expediente administrativo es información pública susceptible de ser descubierta por un licitador o por el público en general, no obstante,

como sabemos, el derecho de acceso a información pública no es absoluto, y en ocasiones tiene que ceder ante intereses apremiantes como sería privilegios evidenciarios o información confidencial. IEM se aferra en su argumentación al caso *Trans Ad de Puerto Rico v. Junta de Subastas de la Autoridad Metropolitana de Autobuses, supra,* sin embargo, en ese caso el Tribunal Supremo fue claro al establecer que no estaban pasando juicio sobre un reclamo de confidencialidad relacionado al expediente administrativo. Igualmente, la sec. 10.14 del RFP, que rige el proceso de licitación, es clara en establecer que las partes tienen el beneficio de someter sus propuestas con tachaduras, protegiendo así información que ellos entiendan sea confidencial y/o sensitiva. Resolvemos que el Departamento de Vivienda hizo lo propio y produjo a la parte la información requerida, y al mismo tiempo resguardó información confidencial de los licitadores.

**IV.**

Por todo lo expuesto anteriormente, *confirmamos* el Aviso de Adjudicación del Departamento de Vivienda adjudicando la buena pro a ICF, ya que esta Curia está impedida de sustituir nuestro criterio por el de una agencia en ausencia de una determinación arbitraria o caprichosa, o donde exista fraude o mala fe.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones